RECEIVED
IN LAKE CHARLES, LA.
APR - 2 2014
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CHAQUITHA ROSHAWN NELSON | * | CIVIL ACTION NO. 2:11-CV-1377 |
| Plaintiff | * | |
| V. | * | |
| LAKE CHARLES STEVEDORES, L.L.C., INTERNATIONAL LONGSHOREMAN'S ASSOCIATION, INC., INTERNATIONAL LONGSHOREMAN'S ASSOCIATION LOCAL NO. 2047, & MARVIN COLE, SR. | * | JUDGE MINALDI |
| | * | MAGISTRATE JUDGE KAY |
| Defendants | * | |

## MEMORANDUM RULING

Before the court is the Motion for Summary Judgment [Doc. 89], filed by Lake Charles Stevedores, L.L.C. (LCS), to which the plaintiff has filed an Opposition [Doc. 97]. For the following reasons, LCS's Motion is hereby **GRANTED**.

Also before the court is Marvin Cole's Motion for Judgment on the Pleadings [Doc. 93], to which the plaintiff has filed an Opposition [Doc. 96]. For the following reasons, Mr. Cole's Motion is hereby **GRANTED**.

Also before the court is a Motion for Summary Judgment [Doc. 88], filed by the International Longshoreman's Association Local No. 2047 (the Local), to which the plaintiff has filed an Opposition [Doc. 98]. For the following reasons, the Local's Motion [Doc. 88] is hereby **GRANTED**.

Also before the court is a Motion for Judgment on the Pleadings [Doc. 84], filed by the Local, to which the plaintiff has filed an Opposition [Doc. 95]. For the following reasons, the Motion [Doc. 84] be and hereby is **DENIED, AS MOOT**.

1

## FACTS AND PROCEDURAL HISTORY

The plaintiff filed suit against the defendants for claims of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*[1] As the court's previous ruling[2] on LCS's first Motion for Summary Judgment set forth the facts in some detail, the court hereby adopts by reference the facts as set forth in the court's Memorandum Ruling [Doc. 68] of January 17, 2014. As such, they will not be repeated in full herein. Essentially, the plaintiff claims that the defendant, Marvin Cole, a walking foreman for LCS at the Port of Lake Charles, and a member of the Local, over the course of a single afternoon made a number of inappropriate comments to the plaintiff and "popped [the plaintiff] on the butt" with an unidentified object while the plaintiff was exiting the hold of a ship.[3]

Following this incident, the plaintiff, very much offended, pursued disciplinary action with her superiors and ultimately filed a complaint with the Equal Opportunity Employment Commission (E.E.O.C.) against Mr. Cole.[4] The plaintiff alleges that her complaints resulted in her being repeatedly denied work at the port, as several of the foremen allegedly refused to hire the plaintiff thereafter on a number of occasions.[5] She also alleges that she was improperly suspended at one point, for seven days, as a result of her allegations.[6]

The court's previous ruling dismissed the plaintiff's claims for sexual harassment, punitive damages, equitable relief, and court costs against LCS.[7] However, there are still remaining claims against LCS for retaliation under Title VII, as well as a claim under a theory of respondeat superior. All of the immediately aforementioned claims remain against both Marvin

---

[1] Am. Compl. [Doc. 4], at ¶ 1.1.
[2] *See* Memo. Ruling [Doc. 68], at 1-6.
[3] *See* Memo. Ruling [Doc. 68], at 1-3 (*quoting* Depo. of Chaquitha R. Nelson [Doc. 48-3], at 48).
[4] Memo. Ruling [Doc. 68], at 3-4.
[5] *Id.* at 4.
[6] *Id.* (*citing* Depo of Chaquitha R. Nelson [Doc. 48-3], at 95-96).
[7] *See* Order [Doc. 69], at 1-2.

2

Cole, who has filed a Motion for Judgment on the Pleadings [Doc. 93], and the Local, which has filed both a Motion for Judgment on the Pleadings [Doc. 84], as well as a Motion for Summary Judgment [Doc. 88]. Additionally, the plaintiff has also asserted a claim for breach of contract, as well as breach of the duty of fair representation against the Local.

## LAW & ANALYSIS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. PRO. 12(c). It should be noted at the outset that, despite the close temporal proximity to trial, the court granted the parties leave in late January, 2014, to submit additional dispositive motions.[8]

A motion for judgment on the pleadings incorporates the same standard used in evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010) (*citing Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The key inquiry is whether the facts set forth in the complaint, taken in a light that is most favorable to the plaintiff, are sufficient to state a valid claim for relief. *Id.* at 544 (*quoting Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Courts do not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (*quoting Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

It should be noted, however, that, when ruling on a motion for judgment on the pleadings, courts must employ the standards and procedures set forth in Federal Rule of Civil Procedure 56 for disposing of motions for summary judgment when "matters outside the pleadings are

---

[8] Electronic Order [Doc. 78].

3

presented to and not excluded by the court." FED. R. CIV. PRO. 12(d). As Mr. Cole's Motion [Doc. 93] relies on the prior Memorandum Ruling [Doc. 68] of the court, and that document relied on affidavit evidence, deposition testimony, and other evidence outside of the pleadings, the Rule 56 standard should be applied to Mr. Cole's Motion [Doc. 93].

Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citation omitted). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). "[I]n arguing that a genuine issue of material fact exists that precludes summary judgment, the non-movant must identify specific evidence in the record to support its position." *Toups v. Moreno Group, L.L.C.*, No. 11-1559, 2013 U.S. Dist. LEXIS 39695, at *15 (W.D. La. Mar. 21, 2013) (citation omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a motion for summary judgment, a court is not to make any credibility determinations. *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001) (citation omitted). All evidence is considered is the light most favorable to the nonmoving party, and all reasonable inferences are drawn in that party's favor. *Jenkins v. Cleco Power, L.L.C.*, 487 F.3d 309, 313-14 (5th Cir. 2007) (citations omitted).

### MARVIN COLE'S MOTION

The plaintiff has asserted claims in this action for sexual harassment, retaliation, respondeat superior, gross negligence, equitable relief, court costs, and breach of contract and breach of the duty of fair representation.[9] However, it is unclear how any of these claims apply to Mr. Cole.

Title VII makes it "an unlawful employment practice for an *employer* . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). However, "the statutory scheme of title VII indicate[s] that Congress did not intend to impose individual liability on employees." *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994).[10] While the statute defines "employer" to include any "agent" of the employer, 42 U.S.C. §2000e(b), "the purpose of the 'agent' provision in § 2000e(b) [is] to incorporate *respondeat superior* liability into title VII." *Grant*, 21 F.3d at 652 (emphasis in original). "Thus, a Title VII suit against an employee is actually a suit against the [employer]." *Hosey v. M.L. Smith, Jr., Inc.*, No. 3:05-1706, 2007 U.S. Dist. LEXIS 65982, at *15 (W.D. La. Sept. 6, 2007) (quoting *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (additional citations omitted)). The bottom line is that "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Id.* (citing *Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003)).

In the instant case, there is no set of circumstances under which the plaintiff could recover against Mr. Cole under Title VII. As such, even resolving all issues of fact in favor of

---

[9] *See* Memo. Ruling [Doc. 68], at 5-6.
[10] *See also Carpenter v. Miss. Valley State Univ.*, 807 F. Supp. 2d 570, 587 (N.D. Miss. 2011) (*citing Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999); *Chehl v. So. Univ. & Agric. & Mech. Coll.*, 34 Fed. Appx. 963 (5th Cir. 2002) (additional citations omitted) (stating that "[w]hile Title VII defines 'employer' to include any agent of the employer, the Fifth Circuit does not interpret the statute to impose individual liability on the agent")).

the plaintiff, Mr. Cole is entitled to summary judgment on the claims for sexual harassment, retaliation, gross negligence and punitive damages,[11] equitable relief and court costs.

As to the plaintiff's claims under a theory of respondeat superior, again, as noted in the court's prior ruling, the Louisiana Civil Code provides that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed."[12] Like claims under Title VII, the doctrine of respondeat superior in Louisiana has nothing to do with imposing liability on individual employees. Accordingly,

**IT IS ORDERED** that the Motion for Judgment on the Pleadings [Doc. 93], filed by Marvin Cole, be and hereby is **GRANTED**, and all of the plaintiff's remaining claims against Mr. Cole be and hereby are **DISMISSED, WITH PREJUDICE**.

### THE LOCAL'S MOTION FOR SUMMARY JUDGMENT

In addition to the Title VII claims asserted against all of the defendants herein, the plaintiff has also stated claims for breach of contract and breach of the fair duty of representation.[13] It should be noted, however, that the plaintiff's First Amended Complaint [Doc. 4] is somewhat lacking in specificity regarding these claims. The plaintiff alleges that "[t]he negligent acts and/or omissions of the Defendants was [sic] a proximate and producing cause of the injuries suffered by the Plaintiff,"[14] but she never states of what those acts and omissions actually consisted. The plaintiff does state that when she "filed a grievance against members of the Union, Defendants refused to or simply failed to represent her because of her sex

---

[11] *See* Memo. Ruling [Doc. 68], at 17-18 (noting that, due to the lack of precision as to the particulars of the plaintiff's claim for gross negligence and punitive damages, "the court is left to assume that the plaintiff is characterizing her pursuit of punitive damages under applicable federal law as a claim for gross negligence," pursuant to 42 U.S.C. § 1981a(b)(1)). This plaintiff has not challenged the court's assessment in this regard.
[12] Memo. Ruling [Doc. 68], at 16-17 (*citing* LA. CIV. CODE ANN. art. 2320).
[13] Am. Compl. [Doc. 4], at ¶¶ 8.1 – 8.4.
[14] Am. Compl. [Doc. 4], at ¶ 8.3.

6

and in retaliation for her filing a grievance and EEO complaint. Defendant's [sic] had a duty to investigate Plaintiff's claims."[15] She goes on to state that the "breach of Defendant's fair duty of representation occurred when the Union acted based on improper motivation and/or in a manner which was arbitrary, perfunctory or inexcusably neglectful toward the Plaintiff."[16]

Labor unions selected to represent a bargaining unit of employees have "a duty, implied from [their] status under § 9(a)[17] of the NLRA . . . to represent all members fairly." *Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1998) (*citing Ford Motor Co. v. Huffman*, 345 U.S. 330, 337 (1953) (additional citation omitted)). "A union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Marquez*, 525 U.S. at 44 (*citing Vaca v. Sipes*, 386 U.S. 171, 190 (1967)).

Section 301(a) of the Labor Management Relations Act "preempts causes of action arising in tort or contract and provides the exclusive remedy for an employee covered by a collective bargaining agreement." *Williams v. Cytec Indus.*, No. 04-761, 2005 U.S. Dist. LEXIS 656, at *30-31 (E.D. La. Jan. 14, 2005) (*citing* 29 U.S.C. § 185(a); *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994) (additional citations omitted)).[18] These cases, wherein a plaintiff asserts a claim against an employer for breach of a collective bargaining agreement in conjunction with a claim against the union for a breach of the duty of fair representation are commonly referred to as "hybrid" suits "because of the intricate relationship" between the two causes of action. *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 287 (5th Cir. 1988).

---

[15] *Id.* at ¶ 8.3C
[16] *Id.* at ¶ 8.3E
[17] *See* 29 U.S.C. § 159(a)
[18] *See* 29 U.S.C. § 185(a), stating that
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

7

> The interdependency arises from the nature of the collective bargaining agreement. If the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted the procedure. Further, he is bound by the procedure's result unless he proves the union breached its duty of fair representation.

*Id.* at 288 (*quoting Daigle v. Gulf State Util. Co.*, 794 F.2d 974, 977 (5th Cir. 1986)). Thus, the general rule is that exhaustion of the grievance procedure contained in the collective bargaining agreement is a prerequisite to the filing of a claim for breach of the duty of fair representation.

The collective bargaining agreement herein (CBA) sets forth a detailed procedure for the handling of grievances between parties.[19] In part, the CBA states that

> [t]his grievance procedure and arbitration shall be the exclusive remedy with respect to any and all disputes arising between the Union or any person working under the Agreement or both, on the one hand, and the Association or any company acting under the Agreement or both, on the other hand, and no other remedies shall be utilized, except those remedies specifically provided for under this Agreement.[20]

In the event of a dispute, the CBA procedure requires an immediate discussion between representatives for the employer and the Local.[21] If no settlement may be reached, the matter, upon request, shall be referred to a Spot Grievance Committee.[22] Within two hours of referral, members of the Committee are to investigate, and a unanimous decision of the Committee at this point is binding.[23] If no agreement can be reached, the parties are to subject themselves to mediation, followed by arbitration, if necessary, in accordance with the agreement.[24]

There has been little discussion in brief by the parties as to whether the plaintiff exhausted her remedies under the CBA as is required prior to filing suit for a breach of the duty of fair representation. However, as the court noted in its prior ruling, there is evidence that,

---

[19] *See generally* CBA [Doc. 48-5], at Rule 42, GRIEVANCE PROCEDURE AND ARBITRATION.
[20] CBA [Doc. 48-5], at Rule 42.B.1, GRIEVANCE PROCEDURE AND ARBITRATION.
[21] *Id.* at Rule 42.B.2.
[22] *Id.*
[23] *Id.*
[24] *Id.* (describing Steps 2 and 3 of the grievance procedure).

following the incident between the plaintiff and Mr. Cole, the plaintiff met with Glen Lewis, the business agent for the Local, as well as Rick Cormier, business manager for LCS.[25] There is further evidence that Mr. Cormier met with Cole and warned him of the consequences that would result from any further inappropriate behavior.[26] However, it appears from the record that at no point was there a request from any party that the matter be referred to a Spot Grievance Committee. As such, the plaintiff has not exhausted her remedies under the CBA.

There are, however, several notable exceptions which permit claims for breach of a collective bargaining agreement and a breach of the duty of fair representation to persist in the absence of the exhaustion of a plaintiff's remedies under a collective bargaining agreement.

> No exhaustion is necessary if: (1) the union wrongfully refuses to process the employee's grievance, thus violating its duty of fair representation; (2) the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract; or (3) exhaustion of contractual remedies would be futile because the aggrieved employee would have to submit his claim to a group "which is in large part chosen by the [employer and union] against whom [his] real complaint is made."

*Bache*, 840 F.2d at 288 (*citing Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 519 (5th Cir. 1978) (citations omitted)). Assuming, *arguendo*, that one of these exceptions applies, the plaintiff still bears the burden of showing that the Local's conduct with regard to the resolution of the plaintiff's complaints was "arbitrary, discriminatory, or in bad faith." *Marquez*, 525 U.S. at 44 (*citing Vaca*, 386 U.S. at 190). Allegations of mere negligence are insufficient to sustain a claim for breach of the duty of fair representation. *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73 (1990).

The Local argues that the plaintiff's "conclusory allegations fail to articulate one factual circumstance of failure to represent."[27] A review of the plaintiff's Complaint [Doc. 4] largely

---

[25] Memo. Ruling [Doc. 68], at 3.
[26] *Id.* at 4.
[27] Memo. in Supp. [Doc. 88-1], at 13.

9

supports the Local's argument in this regard. The closest that the plaintiff comes to making an actual factual assertion is when the plaintiff states that the "Defendants refused to or simply failed to represent her because of her sex and in retaliation for her filing a grievance and EEO complaint."[28]

"The doctrine of fair representation is an important check on the arbitrary exercise of union power, but it is a purposefully limited check." *Id.* at 374. Indeed, the Supreme Court has stated that a "wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents." *Id.* (*citing Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)).

In *Moore v. Potter*, 275 Fed. Appx. 405 (5th Cir. 2008), the Fifth Circuit dismissed the plaintiff-union member's claims for breach of the duty of fair representation where the plaintiff alleged, among other things, that the union failed to produce witnesses at the plaintiff's arbitration; that Supreme Court precedent was violated; that the plaintiff's constitutional rights were violated; that the union ignored a zero tolerance policy on workplace violence; and that the union's investigation was conducted improperly. *Id.* at 409. The court therein found that these allegations were largely conclusory in nature, and, in any event, did not rise to the level of describing conduct that was arbitrary, discriminatory, or in bad faith. *Id.* at 409-10.

A union does not breach its duty of fair representation "when its conduct in processing an employee's grievance [is] less than enthusiastic and not perfect." *Id.* at 409 (*citing Landry v. The Cooper/T.Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989)). Here, it appears that the plaintiff did not exhaust her remedies under the CBA as was required. Even assuming that an exception to exhaustion exists, and taking all of the plaintiff's factual allegations as true, the plaintiff has failed to sufficiently plead, or submit supporting evidence for, a claim for breach of

---

[28] Am. Compl. [Doc. 4], at ¶ 8.3(C).

the duty of fair representation against the Local. The plaintiff had contact with both representatives from the Local and LCS regarding this incident.[29] Glen Lewis, business agent for Local 2047, completed a formal charge on the plaintiff's behalf.[30] Rick Cormier, business manager for LCS, met with Mr. Cole following the plaintiff's allegations, and cautioned him as to the consequences of any acts of retaliation against the plaintiff.[31] The plaintiff does not allege, nor does it appear from the record, that the Local behaved at any time in a manner that was arbitrary, discriminatory, or in bad faith with regard to its handling of the plaintiff's concerns. Accordingly,

**IT IS ORDERED** that the Local's Motion for Summary Judgment [Doc. 88] be and hereby is **GRANTED** as to the plaintiff's claims for breach of contract and breach of the duty of fair representation.

The plaintiff has also asserted a claim for sexual discrimination under Title VII against the Local.[32] The court's prior Memorandum Ruling [Doc. 68] on this matter included a detailed analysis as to the showing required in order to sustain a claim for sexual harassment against a Title VII employer.[33] The court hereby incorporates that portion of the prior Memorandum Ruling[34] discussing the plaintiff's Title VII claim against LCS; the applicability of this prior analysis persists because the plaintiff's theories of recovery under Title VII against both LCS and the Local are identical in that she argues that both parties were her employers.

---

[29] *See* Memo. Ruling [Doc. 68], at 3.
[30] *Id.*
[31] *Id.* at 3-4.
[32] Am. Compl. [Doc. 4], at ¶ VI.
[33] Memo. Ruling [Doc. 68], at 10-14.
[34] *Id.*

In granting summary judgment for LCS therein, the court, after citing and reviewing extensive Fifth Circuit case law involving sexual harassment claims under Title VII,[35] concluded that, "accepting all of the plaintiff's allegations as true, and consistent with the jurisprudence of this circuit . . . the plaintiff's Title VII claim for sexual harassment fails as a matter of law due to a lack of sufficient severity or pervasiveness."[36] The court noted that "[w]hile the plaintiff's allegations regarding Mr. Cole's behavior, if true, reveal behavior that is unquestionably offensive, unprofessional, inappropriately invasive and extremely childish, its severity is somewhat less than what has been held by other courts to be necessary in order to sustain a claim under Title VII."[37] These factual findings and legal conclusions apply with equal force to both LCS and the Local. Accordingly,

**IT IS ORDERED** that the Local's Motion for Summary Judgment [Doc. 88] be and hereby is **GRANTED** as to the plaintiff's claim for sexual discrimination under Title VII.

The prior opinion of the court also disposed of the plaintiff's claims for punitive damages against LCS. The court hereby incorporates and adopts by reference that portion of the prior opinion addressing the plaintiff's claims for punitive damages,[38] in which the court noted that, "[g]iven the fact that the conduct here has already been determined not to have been of a sufficient degree of severity or pervasiveness . . . as to the claim for sexual harassment. . . the court is disinclined to allow . . . punitive damages in this instance."[39] As was the case with regards to the plaintiff's claim for sexual harassment, the factual findings and legal conclusions

---

[35] *See* Memo. Ruling [Doc. 68], at 13-14, nn.57-59 (*discussing McClinton v. Sam's East, Inc.*, No. 11-cv-2156, 2012 U.S. Dist. LEXIS 141013 (W.D. La. Sept. 28, 2012); *Waltman v. Int'l Paper Co.*, 875 F.2d 468 (5th Cir. 1989); *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 328 (5th Cir. 2005); *Paul v. Northrop Grumman Ship Sys.*, 309 Fed. Appx. 825 (5th Cir. 2009); *McKinnis v. Crescent Guardian, Inc.*, 189 Fed. Appx. 307 (5th Cir. 2006)).
[36] *See* Memo. Ruling [Doc. 68], at 14.
[37] Memo. Ruling [Doc. 68], at 13 (*citing McClinton*, 2012 U.S. Dist. LEXIS 141013).
[38] Memo. Ruling [Doc. 68], at 17-19.
[39] *Id.* at 18-19.

contained in the court's prior discussion[40] of the plaintiff's claims for punitive damages against LCS have equal application to the Local. Accordingly,

**IT IS ORDERED** that the Local's Motion for Summary Judgment [Doc. 88] be and hereby is **GRANTED** as to the plaintiff's claims for punitive damages under Title VII.

The court hereby similarly incorporates by reference the legal analysis set forth in the prior Memorandum Ruling [Doc. 68] of the court addressing the plaintiff's claims for equitable relief and court costs.[41] Accordingly,

**IT IS ORDERED** that the Local's Motion for Summary Judgment [Doc. 88] be and hereby is **GRANTED** as to the plaintiff's claims for equitable relief and court costs.

### THE PLAINTIFF'S CLAIMS FOR RETALIATION AGAINST LCS AND THE LOCAL

The plaintiff has also sued both LCS and the Local under Title VII for retaliation.[42] The court's previous ruling denied LCS's Motion for Summary Judgment as to the plaintiff's claim against LCS for retaliation.[43]

The Fifth Circuit has stated that, in order to establish a prima facie case against an employer for retaliation, the plaintiff

> must demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. Under Title VII, an employee has engaged in protected activity if she has "opposed any practice made an unlawful employment practice under [Title VII]." 42 U.S.C. § 2000e-3(a).

*Royal v. C.C.C. & R. Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007)). Title VII creates a remedy against employers for discriminatory treatment. *See* 42 U.S.C. 2000e-2(a)(1). For individuals or

---

[40] *Id.*
[41] *Id.* at 19-20.
[42] *See generally* Am. Compl. [Doc. 4], at ¶ 7.
[43] Memo. Ruling [Doc. 68], at 16.

entities to be held liable under Title VII, they must first meet the statutory definition of "employer," and must also have an "employment relationship" with the plaintiff. *McNeal v. David Zerkel Sales, Ltd.*, No. 10-cv-1723, 2011 U.S. Dist. LEXIS 82236, at *7 (W.D. La. May 12, 2011) (*citing Deal v. State Farm*, 5 F.3d 117, 118 n.2 (5th Cir. 1993)).

The court's prior ruling on this matter found that LCS was the plaintiff's Title VII employer.[44] The Local now seems to argue that this finding necessarily precludes a finding of liability as to the Local under Title VII, apparently presuming that both LCS and the Local could not both satisfy the Fifth Circuit's tests for employment in Title VII cases.[45]

The argument that the Local is necessarily *not* an employer as a result of the court's prior finding that LCS *is* an employer is not particularly compelling on its face. In the context of the Age Discrimination in Employment Act, for instance, the Supreme Court has noted that "Congress has provided remedies for the situation where a labor union is less than vigorous in defense of its members' claims of discrimination." *14 Penn Plaza L.L.C. v. Pyett*, 556 U.S. 247, 272 (2009).[46]

Nevertheless, assuming, without deciding, that the Local was a Title VII employer of the plaintiff's, the plaintiff's claims for retaliation nevertheless fail as to both LCS and the Local. The court's prior ruling on this matter denied LCS's Motion for Summary Judgment on the plaintiff's claims for retaliation because at the time there was an unresolved genuine dispute of material fact as to whether any adverse employment actions actually transpired.[47] This may now be resolved in the negative.

---

[44] Memo. Ruling [Doc. 68], at 10.
[45] *See* Memo. in Supp. [Doc. 88-1], at 12.
[46] *See also Pyett*, 556 U.S. at 272 (*citing* 1 B. LINDEMANN & P. GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 1575-81 (4th ed. 2007) (stating that "a labor union may be held jointly liable with an employer under federal antidiscrimination laws for discriminating in the formation of a collective-bargaining agreement, knowingly acquiescing in the employer's discrimination, or inducing the employer to discriminate").
[47] Memo. Ruling [Doc. 68], at 16.

Whether the challenged action of an employer in the context of a Title VII claim for retaliation was an adverse employment action "depends on whether the act was materially adverse, meaning that it would 'have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Anthony v. Donahoe*, 460 Fed. Appx. 399, 404 (5th Cir. 2012) (citing *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). In *Anthony*, the Fifth Circuit found that the plaintiff had not sufficiently showed that an adverse employment action had taken place where she had been reassigned, but had experienced no change in salary or benefits. *Id.* at 404-05. Likewise, here, there is no evidence that the plaintiff suffered a decrease in either salary or benefits. The plaintiff has offered no evidence that she suffered an actual decrease in hours worked since either the incident in question or her filing of a complaint with the E.E.O.C.

In the court's prior ruling denying LCS's motion for summary judgment as to the plaintiff's claim for retaliation, the court stated that

> LCS was, in fact, in a position to levy adverse employment actions upon the plaintiff in the form of denying her placement on gangs, effectively denying her a living. If LCS *actually engaged* in such behavior, then the second element required for a retaliation claim—that an adverse employment action occurred—is met.[48]

At this time, both LCS and the Local have submitted documentation of the plaintiff's wages and hours worked. The E.E.O.C. complaint was filed on July 15, 2009.[49] From the beginning of 2009 until the filing of the E.E.O.C. complaint, the plaintiff earned approximately $10,256.59 working at the port.[50] From the filing of the complaint until the end of 2009, the plaintiff earned approximately $10,177.41 at the port.[51] This hardly supports a showing of denials of work rising

---

[48] Memo. Ruling [Doc. 68], at 16.
[49] Am. Compl. [Doc. 4], at ¶ 3.2.
[50] *See* Earning History of Nelson, Chaquitha Roshawn [Doc. 89-3], at 23-26.
[51] *Id.* at 19-23.

to the level of constituting an adverse employment action. Indeed, the data submitted scarcely shows evidence of any denials of work at all. Likewise, the plaintiff's complaint in the instant case was filed on July 22, 2011. From July 22, 2011, until the end of the year, the plaintiff earned approximately $8,691.93 working at the port—an amount only marginally less than what she had made in 2009 during a slightly longer period of time. Moreover, this could be more than adequately explained by the plaintiff's statement to the effect that progressively less and less work has been available overall at the port as time has progressed.[52]

The plaintiff's allegations regarding each individual instance of having been denied work have little specificity, and, further, are often not of the type that would support an adverse employment action having taken place. For instance, the plaintiff alleges that Mr. James Williams refused to hire the plaintiff on one occasion, but subsequently relented after having been ordered to hire the plaintiff by Mr. Lewis. These types of incidents do not support a finding of an adverse employment action, nor do they support a claim of retaliation against either LCS or the Local.

Furthermore, even assuming that the plaintiff had shown that an adverse employment action had been taken, she has made little showing with regard to the third required element of establishing a prima facie case for retaliation: that "a causal link exists between the protected activity and the adverse employment action." *Royal*, 736 F.3d at 400 (citation omitted). A plaintiff's burden in showing causation in terms of establishing a prima facie case for retaliation "does not rise to the level of a 'but for' standard." *Everett v. Cent. Miss., Inc., Head Start Program*, 444 Fed. Appx. 38, 46 (5th Cir. 2011) (citation omitted). The plaintiff is not required to prove that her protected activity—in this case, the filing of an E.E.O.C. complaint—was the "sole factor motivating the employer's challenged decision." *Id.* (citation omitted). However, a

---

[52] *See* Depo. of Chaquitha R. Nelson [Doc. 48-3], at 130.

16

total absence of any evidence whatsoever is insufficient in this regard. "Temporal proximity between protected activity and an adverse employment action, by itself, does not constitute sufficient evidence to satisfy the prima facie burden unless that proximity is 'very close.'" *Id.* (*citing Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). The focus as to the causation inquiry is to be upon the "final decisionmaker; that is, the plaintiff must present evidence that the final decisionmaker with respect to the adverse employment action was aware of the plaintiff's protected conduct." *Id.* (*citing Ackel*, 339 F.3d at 385).

The plaintiff has not met her evidentiary burden as to establishing a causal link between the filing of her E.E.O.C. complaint and the alleged adverse employment action, herein. Again, even assuming that the events herein constituted an adverse employment action (which it has already been determined that they did not), the plaintiff has failed to show that the alleged denials of work occurred in a close enough temporal proximity as to establish the requisite causal link on this basis. *See Everett*, 444 Fed. Appx. at 46 (citation omitted). Furthermore, the plaintiff submits no evidence that those who allegedly denied her work even had knowledge of the E.E.O.C. complaint. She admitted in her deposition, for instance, that she had no knowledge as to whether Tom Flanagan ever had any knowledge of her complaint.[53]

In *Everett*, the Fifth Circuit affirmed the ruling of the district court, dismissing the plaintiff's claim for retaliation against her employer therein, because the plaintiff failed to satisfy her burden of showing a causal link between the adverse employment action in question and her filing of an E.E.O.C. complaint. *Everett*, 444 Fed. Appx. at 46. The court therein noted that, "even assuming the final decisionmakers had knowledge of the EEOC charges and the First Suit, there is no evidence of the requisite causal connection." *Id.* at 47. The court in *Everett* found that the temporal proximity that might give rise to a finding of a causal link was not sufficiently

---

[53] Depo. of Chaquitha R. Nelson [Doc. 48-3], at 108.

close where the plaintiff was reprimanded by her employer in October of 2008, more than six months after filing of her initial suit. *Id.* The court similarly failed to find a causal link between the *Everett* plaintiff's June 2009 termination and the filing of her third E.E.O.C. charge, five months earlier. *Id.* There is no specificity to the instant allegations that would lead the court herein to conclude that there was any closer temporal proximity between the plaintiff's filing of her E.E.O.C. charge and the alleged adverse employment actions. Moreover, even if there were, there is no guarantee that such a time period would be sufficiently close as to necessarily establish the required causal link. This, combined with a lack of evidence, or even allegations, as to what the offending parties allegedly knew and when they knew it, constitutes a failure to establish the requisite causal link. Accordingly,

**IT IS ORDERED** that the Local's Motion for Summary Judgment [Doc. 88] be and hereby is **GRANTED** as to the plaintiff's claims for retaliation under Title VII.

**IT IS FURTHER ORDERED** that LCS's Motion for Summary Judgment [Doc. 89] be and hereby is **GRANTED** as to the plaintiff's claims for retaliation under Title VII.

### THE PLAINTIFF'S RESPONDEAT SUPERIOR CLAIMS AGAINST LCS AND THE LOCAL

The plaintiff has also asserted claims against LCS and the Local under a theory of respondeat superior.[54] The court's previous ruling on this claim declined to grant summary judgment in favor of LCS at the time.[55]

The plaintiff's Complaint [Doc. 4] offers little in the way of specificity with regard to the plaintiff's claims for respondeat superior, stating only slightly more than that "the Defendants are liable to Plaintiff."[56] The Local's Motion for Summary Judgment [Doc. 88] offers virtually nothing in the way of argument as to this claim, although it is unclear whether this was a briefing

---

[54] Am. Compl. [Doc. 4], at ¶ 9.3.
[55] Memo. Ruling [Doc. 68], at 17.
[56] Am. Compl. [Doc. 4], at ¶ 9.3.

oversight or a result of its position that it is not an employer. LCS's Motion for Summary Judgment [Doc. 89] offers a mere two sentences in argument as to this claim, stating simply that there can be no damages under a theory of respondeat superior because there was no actionable retaliation herein.[57] Likewise, the plaintiff's two Oppositions [Docs. 97 & 98] offer a meager two sentences as to this claim, stating only that retaliation did occur and therefore the doctrine of respondeat superior *is* applicable.[58]

Louisiana law allows injured parties to recover from employers for the damages caused by their employees "in the exercise of the functions in which they are employed." LA. CIV. CODE ANN. art. 2320. As noted in the court's prior ruling, to recover under a theory of respondeat superior, a plaintiff must show the existence of an employer-employee relationship and that the employee's negligent acts were committed in the course and scope of employment. *See, e.g., Jenkins v. Jefferson Parish Sheriff's Office*, 402 So. 2d 669, 674 (La. 1981) (*citing Moreau v. Landry*, 305 So. 2d 671 (La. Ct. App. 1974)).

Here, the plaintiff has failed to meet her burden of establishing a prima facie case for recovery under a theory of respondeat superior. There is no argument offered by the plaintiff—or any of the defendants for that matter—as to any employee's negligent conduct that could thereby be attributed to any employer under a theory of respondeat superior. There is no argument or analysis of the negligence factors under Louisiana law offered by any of the parties to this action. *See, e.g., Bellanger v. Webre*, 65 So. 3d 201, 207 (La. Ct. App. 2011) (setting forth the required elements under Louisiana's duty-risk framework as to negligence claims). The plaintiff has thus failed to muster sufficient evidence, or even allegations, to sustain a claim under a theory of respondeat superior. Accordingly,

---

[57] Memo. in Supp. [Doc. 89-2], at 7.
[58] Memo. in Opp. [Doc. 97], at 8.

**IT IS ORDERED** that the Local's Motion for Summary Judgment [Doc. 88] be and hereby is **GRANTED** as to the plaintiff's claims under a theory of respondeat superior.

**IT IS FURTHER ORDERED** that LCS's Motion for Summary Judgment [Doc. 89] be and hereby is **GRANTED** as to the plaintiff's claims under a theory of respondeat superior.

**IT IS FURTHER ORDERED** that, given the foregoing, the Local's Motion for Judgment on the Pleadings [Doc. 84] be and hereby is **DENIED, AS MOOT**.

**IT IS FURTHER ORDERED** that, as the foregoing disposes of all of the plaintiff's remaining claims against all of the defendants herein, the trial in the above captioned matter presently set for April 14, 2014, be and hereby is **UPSET** and removed from the trial calendar, not to be continued.

Lake Charles, Louisiana, this 31 day of March, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE